RECEIPT # 70437S
AMOUNT $ 150.00
SUMMONS ISSUED ✓
LOCAL RULE 4.1 ✓
WAIVER FORM ✓
MCF ISSUED ✓
BY DPTY. CLK.
DATE 2-27-04

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED IN OFFICE
2004 FEB 27  P 3:07
U.S. DISTRICT COURT
DISTRICT OF MASS.

ROBERT W. FAHLBECK,  )
    Plaintiff,  )
      )
V.  )  DOCKET NO
      )
ASTRAZENECA LP; STEPHEN P. GRENIER;  )  04 - 40029
JACQUELINE A. GUNNERSON; and  )
ROBERT J. PETERS, JR.,  )
    Defendants.  )

## COMPLAINT AND CLAIM FOR JURY TRIAL

### Jurisdiction

1. Jurisdiction of this action arises under and the Americans with Disabilities Act ("ADA") 42 U.S.C. § 12111, et seq., and The Family and Medical Leave Act ("FMLA"), 29 U.S.C. §2601, et. seq.

### Venue

2. Venue is proper in this court in that this is the judicial district in which Plaintiff resides and in which the relevant events occurred.

### Parties

3. Plaintiff Robert W. Fahlbeck ("Plaintiff") is an individual residing in North Grafton, Worcester County, Massachusetts.

4. Defendant AstraZeneca LP ("Astra") is a foreign corporation doing business in the Commonwealth of Massachusetts with a principal place of business at 50 Otis Street, Westborough, Worcester County, Massachusetts.

5. Defendant Stephen P. Grenier ("Grenier") is an individual with a last known place of business at 50 Otis Street, Westborough, Worcester County, Massachusetts.

6. Defendant Jacqueline A. Gunnerson ("Gunnerson") is an individual with a last known place of business at 50 Otis Street, Westborough, Worcester County, Massachusetts.

7. Defendant Robert J. Peters ("Peters") is an individual with a last known place of business at 50 Otis Street, Westborough, Worcester County, Massachusetts.

General Allegations

8. Plaintiff was employed by Astra (and its predecessor Astra USA) beginning on or about December 3, 1993.

9. Plaintiff held various positions during his employment at Astra. Plaintiff's initial position was production operator. He was promoted to stockroom attendant in approximately 1995. In approximately July 2000, he became a production operator again when his current position was eliminated. On or about November 12, 2001, Plaintiff obtained the position of warehouse person.

10. At times material hereto, Defendant Grenier was Astra's Senior Director of Operations. Grenier was the third level supervisor over Plaintiff.

11. At times material hereto, Defendant Gunnerson was Astra's Senior Manager, Warehouse Distribution and Logistics. Gunnerson was the second level supervisor over Plaintiff.

12. At times material hereto, Defendant Peters was Plaintiff's immediate supervisor at Astra.

13. Plaintiff performed his job satisfactorily throughout his employment at Astra.

14. On or about August 2, 2002, Plaintiff suffered a work-related injury to his low back while moving a heavy barrel of chemicals.

15. Astra determined that Plaintiff's injury was not the result of any unsafe act on his part and that Plaintiff was following existing procedure at the time.

16. Plaintiff continued to perform his usual job for several days after his work injury. However, the work was aggravating his back injury.

17. Plaintiff was evaluated by Astra's doctor on a number of occasions for this work-related injury.

18. On August 19, 2002, Astra's doctor placed Plaintiff on work restrictions of no lifting more than 15 lbs., no using the swing reach or fork truck, and bending on a limited basis.

19. Plaintiff continued to work with these restrictions until September 18, 2002.

20. Astra assigned Plaintiff modified duty work during this time.

21. On or about September 18, 2002, Plaintiff suffered an exacerbation of his back injury while simply bending down to pick up his boots at home.

22. Astra determined that this September 18, 2002 exacerbation of his was not work-related and denied worker's compensation benefits for it.

23. Astra told Plaintiff to apply for short-term disability benefits.

24. Plaintiff was out of work from approximately September 19, 2002 until September 29, 2002 from this exacerbation of his back injury.

25. Astra's doctor released Plaintiff to work with restrictions as of September 30, 2002. The restrictions were no lifting more than 10 lbs. and no swing arm reach or Yale truck work.

26. Plaintiff continued to work with these restrictions.

27. On or about October 21, 2002, Astra's doctor increased the lifting restriction to 20 lbs. and released Plaintiff to drive the forklift truck.

28. On or about November 18, 2002, Astra's doctor increased the lifting restriction to 30 lbs. and released Plaintiff to operate the swing reach.

29. On December 5, 2002, Plaintiff slipped and fell in Astra's parking lot landing on his left buttock.

30. Astra determined that this fall was not the result of any unsafe act on Plaintiff's part, but was caused by poor sanding and snow removal.

31. In or about November or December 2002, Astra's doctor and the company nurse performed an onsite evaluation of Plaintiff's job in the warehouse to determine if Plaintiff could perform his job without reinjuring his back.

32. On or about December 13, 2002, Astra's doctor released Plaintiff to his usual job without restrictions.

33. Plaintiff's work performance reviews at Astra before his work injury of August 2, 2002 were all satisfactory. Prior to August 2, 2002, Plaintiff was always rated as "meeting expectations."

34. Prior to his work injury of August 2, 2002, Plaintiff received no warnings or other disciplinary actions during his approximate nine years of employment.

35. Plaintiff was terminated from his employment on February 21, 2003 for the stated reason that Plaintiff was not a "good cultural fit" at Astra.

36. In lieu of termination, Plaintiff was given the option of accepting a separation package that included Plaintiff signing a document releasing Astra from any liability.

37. Plaintiff chose not to sign this release document and accordingly was not given the separation package.

38. Subsequent to his termination, Plaintiff obtained a copy of his personnel record at Astra.

39. Documents in Plaintiff's personnel record revealed that his supervisors were concerned about my work-related back injury of August 2, 2002.

40. In a September 25, 2002 e-mail from Defendant Peters to Defendant Gunnerson, Peters stated that "no one disagrees" that Plaintiff provided a "valuable service to the company" and that Plaintiff was "hard working, helpful and conscientious." However, Peters stated that recently Plaintiff was providing "limited" service to the warehouse because of his back injury and thus offered "no real value."

41. In that September 25, 2002 e-mail, Peters stated that Plaintiff's August 2002 injury aggravated an existing back problem that Plaintiff had been suffering with for a long time. Peters stated that he would not have hired Plaintiff for the warehouse position on November 12, 2001 had he known that Plaintiff had been on short-term disability for a back injury from July 30, 2001 to September 6, 2001.

42. In that September 25, 2002 e-mail, Peters stated that Plaintiff should be immediately moved out of the warehouse and assigned to another "less physically challenging position" before Plaintiff re-injured myself.

43. On September 26, 2002, Defendant Gunnerson forwarded Peters' September 25, 2002 e-mail to one Eileen Stowe with the statement that both she and Defendant Grenier supported Peters' "request" as set forth in Peters' September 25, 2002 e-mail.

44. On November 11, 2002, Peters sent another e-mail concerning Plaintiff to Gunnerson stating, "This has been going on since August 19, we need to make a final decision. His [Plaintiff's] being on light duty is now a burden to the warehouse."

5

45. On or about November 12, 2002, forwarded Peters' November 11, 2002 e-mail to Eileen Stowe with the statement they never received any feedback from Astra's doctor, Dr. Hicks, after Dr. Hicks visited the warehouse to learn about the job requirements. Gunnerson stated, "We need a game plan to deal with Bob Fahlbeck's situation."

46. Beginning on or about November 22, 2002, Defendants embarked upon a plan to discipline Plaintiff, not for his work performance, but for using vulgar language and making negative remarks about Astra.

47. On or about December 3, 2002, Grenier and Gunnerson gave Plaintiff a written warning for using vulgar language "on a constant basis" and making negative remarks about the company. The warning stated that if Plaintiff continued to engage in this behavior, "further disciplinary action will be taken; up to and including termination."

48. The issuance of this written warning to Plaintiff violated Astra's progressive discipline policy, which calls for a verbal warning, a written warning, suspension and then termination.

49. Plaintiff had not received a prior verbal warning for this alleged conduct.

50. Plaintiff admits that he used expletives at work, mostly in a joking manner, and had expressed his opinions to co-workers about what he considered unfair work conditions or management actions. However, Plaintiff had acted similarly throughout his prior 9 years of employment at Astra without any disciplinary action taken against him.

51. In issuing this written warning, Grenier and Gunnerson engaged in disparate treatment by singling Plaintiff out for conduct engaged in by most, if not all, Astra employees (and supervisors) at the workplace.

52. Grenier and Gunnerson refused to tell Plaintiff who had complained about him and failed to tell Plaintiff the specific statements being attributed to Plaintiff that they found objectionable.

53. This refusal to disclose specifics of the complaints left Plaintiff unable to effectively govern his conduct or to defend himself if further similar allegations were to be made against him.

54. Plaintiff discussed these concerns with Defendant Peters. In response, Peters agreed to let Plaintiff know if and when a problem arose.

55. In late January 2003, Peters called Plaintiff into his office and told Plaintiff that he was doing well and that there were no problems.

56. In or about mid-January 2003, Plaintiff asked Peters to change him from the early lunch to the late lunch period.

57. The reason for this request was that there were two lunches and the warehouse people generally sat together in the cafeteria during their lunch. Plaintiff wanted to switch because he believed that Group Leader Jim Sanford, who had the early lunch, had made the complaints about the things I said. Plaintiff wanted to avoid unnecessary interaction with Sanford.

58. Peters initially granted Plaintiff's request to switch lunches. However, on or about January 29, 2003, Peters switched Plaintiff back to the early lunch period without explanation.

59. On or about February 14, 2003, Plaintiff asked Group Leader Jim Sanford to assign him to the "back line" because Plaintiff was continuing to have pain in his side from the August 2002 injury and Plaintiff's doctor was concerned about it.

60. Plaintiff asked for the back line because working there required less use of the swing reach and thus less torquing of the back and sides.

61. Sanford assigned Plaintiff to the back line as I requested.

62. On February 21, 2003, one week later, Plaintiff was terminated from his employment for the stated reason that Plaintiff was not a "good cultural fit" at Astra.

63. Defendants claimed that Plaintiff had continued to use vulgar language and had continued to say negative things about the company. However, no specifics were given.

64. Plaintiff's termination violated Astra's progressive discipline policy, which calls for a suspension following a written warning.

65. Plaintiff had made a conscious effort after he had received the written warning to avoid using vulgar language and to avoid making statements to others about the company that someone might consider inappropriate.

66. Peters never informed Plaintiff (as promised by Peters) that there were any further incidents being alleged against Plaintiff. Indeed, Peters told Plaintiff in late January 2003 that there were no problems.

67. Astra terminated Plaintiff's employment because of his work-related injury and resulting disability.

68. Pursuant to M.G.L. c. 152, §75B, Plaintiff is deemed to be a qualified handicapped person since he had sustained a work-related injury and was able to perform the essential functions a particular job with or without reasonable accommodation.

69. Plaintiff is a qualified handicapped person and/or a qualified individual with a disability.

70. The stated reason for Plaintiff's termination was a pretext for unlawful discrimination.

71. Upon information and belief, Plaintiff was replaced by a non-handicapped or non-disabled person.

72. Defendants intentionally discriminated against Plaintiff based on his disability or handicap.

73. Defendant discriminated against Plaintiff because of his disability, his record of a disability and/or his perceived disability.

74. Plaintiff was at all relevant times qualified to perform the essential functions of his job with or without accommodation.

75. Defendants' acts were intentional, malicious and/or done with reckless indifference to Plaintiff's rights.

76. Plaintiff has been injured and damaged by Defendants' acts.

77. Plaintiff has complied with all statutory requirements and conditions precedent necessary to maintain this action by filing a timely charge with the Massachusetts Commission Against Discrimination ("MCAD") and the Equal Employment Opportunity Commission ("EEOC").

78. On December 4, 2003, the EEOC issued Plaintiff a notice of right to sue.

79. Astra at all relevant times has employed more than fifteen persons.

### COUNT I - Disability Discrimination
### (Violation of the Americans With Disabilities Act)
(Against Astra only)

80. Plaintiff repeats the allegations contained in paragraphs 1 through 79 as if fully set forth herein.

81. Plaintiff at all relevant times was a qualified individual with a disability within the meaning of 42 U.S.C. 12111 §101(8).

82. Defendant Astra's acts represent, inter alia, intentional violations of the Americans with Disabilities Act ("ADA") 42 U.S.C. § 12101, et seq.

9

### COUNT II – Disability Discrimination
(Violation of M.G.L. c. 151B)
(Against all Defendants)

83. Plaintiff repeats the allegations contained in paragraphs 1 through 82 as if fully set forth herein.

84. Defendants' conduct represents, inter alia, intentional discrimination on the basis of handicap in violation of M.G.L. c. 151B, s. 4(16).

85. Defendants Grenier, Gunnerson and Peters aided and abetted Astra in such discrimination and unlawfully interfered with Plaintiff's rights in violation of M.G.L. c. 151B, s. 4(4A) and 4(5).

### COUNT III
(Intentional Infliction Of Emotional Distress)
(Against Defendants Grenier, Gunnerson and Peters only)

86. Plaintiff repeats the allegations contained in paragraphs 1 through 85 as if fully set forth herein.

87. Defendants Grenier, Gunnerson and Peters intended to inflict emotional distress upon Plaintiff or they knew or should have known that emotional distress was the likely result of their conduct.

88. The conduct of these Defendants was extreme and outrageous and beyond all possible bounds of decency and utterly intolerable in a civilized community.

89. The actions of these Defendants caused severe emotional distress.

90. Plaintiff's emotional distress was severe and of a nature that no reasonable person could be expected to endure it.

## COUNT IV
### (Tortious Interference With Advantageous Contractual Relations)
(Against Defendants Grenier, Gunnerson and Peters only)

91. Plaintiff repeats the allegations contained in paragraphs 1 through 90 as if fully set forth herein.

92. Plaintiff had advantageous contractual relations with Astra with a reasonable expectation of continued employment and advancement.

93. Defendants Grenier, Gunnerson and Peters knowingly interfered with Plaintiff's employment and induced Astra to terminate Plaintiff's employment.

94. The interference of these Defendants was intentional and was improper in motive or means.

95. Plaintiff was damaged and harmed thereby.

## COUNT V
### (Civil Conspiracy)
(Against all Defendants)

96. Plaintiff repeats the allegations contained in paragraphs 1 through 97 as if fully set forth herein.

97. Defendants acted in concert with each other or pursuant to a common design or agreement to wrongfully and tortiously cause harm to Plaintiff.

98. Defendants, or one of them, committed a tortious act or acts in furtherance of the common design or agreement.

99. Defendants rendered substantial assistance to each other with the knowledge that such assistance contributed to a common tortious plan.

100. Plaintiff was harmed by Defendants' conduct.

11

## COUNT VI
### (Violation of the FMLA)
(Against Astra only)

101. Plaintiff repeats the allegations contained in paragraphs 1 through 100 as if fully set forth herein.

102. Plaintiff was employed by Astra for more than one year.

103. Astra at all relevant times employed more than fifty persons.

104. Astra is a covered employer within the meaning of The Family and Medical Leave Act, 29 U.S.C. §2601, et.seq. ("FMLA").

105. Under the FMLA, Plaintiff was entitled to up to twelve weeks of protected medical leave for a serious health condition.

106. Astra discriminated against and ultimately terminated Plaintiff for taking protected medical leave.

107. Astra committed willful violations of 29 U.S.C. §2615.

## COUNT VII
### (Wrongful Termination)
(Against all Defendants)

108. Plaintiff repeats the allegations contained in Paragraphs 1 through 107 as if fully set forth herein.

109. Defendants wrongfully terminated Plaintiff in violation of a well-established public policy that has its source in legislative and constitutional law.

110. One source of this public policy is the right to freedom of speech guaranteed by the First Amendment to the United States Constitution.

111. Plaintiffs have been damaged by his wrongful termination by Defendants.

## COUNT VIII
### (Violation of M.G.L. c. 152, s. 75B)
(Against Defendant Astra only)

112.  Plaintiff repeats the allegations contained in paragraphs 1 through 111 as if fully set forth herein.

113.  Astra terminated and otherwise discriminated against Plaintiff because of his assertion of rights under the Massachusetts workers' compensation laws.

114.  Astra's acts represent, inter alia, violations of M.G.L. c. 152, s. 75B

## **RELIEF SOUGHT**

WHEREFORE, the Plaintiff prays that this Honorable Court:

A.  Enter judgment against Defendant Astra on Count I for compensatory damages, punitive damages, reasonable attorneys' fees, interest and costs.

B.  Enter judgment against each of the Defendants on Count II for compensatory damages, punitive damages, reasonable attorneys' fees, interest and costs.

C.  Enter judgment against Defendants Grenier, Gunnerson and Peters on Count III for compensatory damages, interest and costs

D.  Enter judgment against Defendants Grenier, Gunnerson and Peters on Count IV for compensatory damages, interest and costs.

E.  Enter judgment against each of the Defendants on Count V for compensatory damages, interest and costs.

F.  Enter judgment against Defendant Astra on Count VI for damages, liquidated damages, reasonable attorneys' fees, interest and costs.

G.  Enter judgment against each of the Defendants on Count VII for compensatory damages, interest and costs.

H.  Enter judgment against Defendant Astra on Count VIII for compensatory damages, reasonable attorneys' fees, interest and costs.

I.  Enter judgment ordering Defendant Astra to reinstate Plaintiff with back pay.

J.  Enter such other and further relief as this Honorable Court may deem just and proper.

**PLAINTIFF CLAIMS A TRIAL BY JURY ON ALL COUNTS.**

ROBERT W. FAHLBECK,

By his Attorney,

*[signature]*

Richard A. Mulhearn
BBO #: 359680
Law Offices of Richard A. Mulhearn
41 Elm Street
Worcester, MA 01609
Telephone: (508) 753-9999

Dated: February 27, 2004.

**04-40029**

JS 44 (Rev. 3/99)  **CIVIL COVER SHEET**

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

### I. (a) PLAINTIFFS
Robert W. Fahlbeck

**DEFENDANTS** Astrazeneca LBE; Stephen P. Grenier; Jacqueline A. Gunnerson; and Robert J. Peters, Jr.

2004 FEB 27 P 3:01

(b) County of Residence of First Listed Plaintiff **Worcester**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED. DISTRICT OF MASS.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Richard A. Mulhearn  508-753-9999
Law Offices of Richard A. Mulhearn
41 Elm St., Worcester, MA 01609

Attorneys (If Known)

### II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

### III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| | PERSONAL INJURY | PERSONAL INJURY | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 110 Insurance | ☐ 310 Airplane | ☐ 362 Personal Injury— | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 120 Marine | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | ☐ 423 Withdrawal | ☐ 430 Banks and Banking |
| ☐ 130 Miller Act | Liability | ☐ 365 Personal Injury — | of Property 21 USC | 28 USC 157 | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | | ☐ 460 Deportation |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | PROPERTY RIGHTS | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | | ☐ 650 Airline Regs. | ☐ 820 Copyrights | ☐ 810 Selective Service |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine | PERSONAL PROPERTY | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 850 Securities/Commodities/ Exchange |
| | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 690 Other | ☐ 840 Trademark | ☐ 875 Customer Challenge |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | LABOR | SOCIAL SECURITY | 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| | | | | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| REAL PROPERTY | CIVIL RIGHTS | PRISONER PETITIONS | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | FEDERAL TAX SUITS | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 220 Foreclosure | ☒ 442 Employment | Habeas Corpus: | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General | ☐ 790 Other Labor Litigation | | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc. Security Act | | |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

### V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

### VI. CAUSE OF ACTION
(Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

42 U.S.C. 12111, ADA; 29 U.S.C. 2601; FMLA; disability discrimination

### VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

### VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE
DOCKET NUMBER

DATE 2/27/04
SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY
RECEIPT #_____ AMOUNT_____ APPLYING IFP_____ JUDGE_____ MAG. JUDGE_____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS **04 - 40029**

1. TITLE OF CASE (NAME OF FIRST PARTY ON EACH SIDE ONLY) Robert W. Fahlbeck v. Astrazeneca LP

2. CATEGORY IN WHICH THE CASE BELONGS BASED UPON THE NUMBERED NATURE OF SUIT CODE LISTED ON THE CIVIL COVER SHEET. (SEE LOCAL RULE 40.1(A)(1)).

   — I.   160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

   X II.  195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730, 740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.   *Also complete AO 120 or AO 121 for patent, trademark or copyright cases

   — III. 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310, 315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371, 380, 385, 450, 891.

   — IV.  220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660, 690, 810, 861-865, 870, 871, 875, 900.

   — V.   150, 152, 153.

3. TITLE AND NUMBER, IF ANY, OF RELATED CASES. (SEE LOCAL RULE 40.1(G)). IF MORE THAN ONE PRIOR RELATED CASE HAS BEEN FILED IN THIS DISTRICT PLEASE INDICATE THE TITLE AND NUMBER OF THE FIRST FILED CASE IN THIS COURT.

4. HAS A PRIOR ACTION BETWEEN THE SAME PARTIES AND BASED ON THE SAME CLAIM EVER BEEN FILED IN THIS COURT?
   YES    **NO**

5. DOES THE COMPLAINT IN THIS CASE QUESTION THE CONSTITUTIONALITY OF AN ACT OF CONGRESS AFFECTING THE PUBLIC INTEREST? (SEE 28 USC §2403)
   YES    **NO**

   IF SO, IS THE U.S.A. OR AN OFFICER, AGENT OR EMPLOYEE OF THE U.S. A PARTY?
   YES    NO

6. IS THIS CASE REQUIRED TO BE HEARD AND DETERMINED BY A DISTRICT COURT OF THREE JUDGES PURSUANT TO TITLE 28 USC §2284?
   YES    **NO**

7. DO ALL OF THE PARTIES IN THIS ACTION, EXCLUDING GOVERNMENTAL AGENCIES OF THE UNITED STATES AND THE COMMONWEALTH OF MASSACHUSETTS ("GOVERNMENTAL AGENCIES"), RESIDING IN MASSACHUSETTS RESIDE IN THE SAME DIVISION? - (SEE LOCAL RULE 40.1(D)).
   **YES**    NO

   A. IF YES, IN WHICH DIVISION DO ALL OF THE NON-GOVERNMENTAL PARTIES RESIDE?
      EASTERN DIVISION    **CENTRAL DIVISION**    WESTERN DIVISION

   B. IF NO, IN WHICH DIVISION DO THE MAJORITY OF THE PLAINTIFFS OR THE ONLY PARTIES, EXCLUDING GOVERNMENTAL AGENCIES, RESIDING IN MASSACHUSETTS RESIDE?
      EASTERN DIVISION    CENTRAL DIVISION    WESTERN DIVISION

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME   Richard A. Mulhearn
ADDRESS           41 Elm St., Worcester, MA 01609
TELEPHONE NO.     (508) 753-9999

(Cover sheet local.wpd - 11/27/00)